**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHARLOTTE CHAPMAN BYRD** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:24-cv-2767** |
| | § | |
| | § | |
| **PRIMORIS SERVICES CORPORATION, PLH Group, Inc., POWER LINE SERVICES, Inc. and FUTURE INFRASTRUCTURE, LLC** | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| | § | |
| | § | |
| ***Defendants.*** | § | |
| | § | |

**Plaintiff's Second Amended Complaint**

Plaintiff Charlotte Chapman Byrd files this, her Second Amended Complaint against Defendants Primoris Services Corporation, PLH Group, Inc., Power Line Services, Inc., and Future Infrastructure, LLC (collectively referred to as "Defendants"), and in support thereof states as follows:

## Parties

1. Plaintiff Charlotte Chapman Byrd ("Plaintiff") or ("Byrd") is an individual residing in Tarrant County, Texas.

2. Primoris Services Corporation ("PSC") is a foreign corporation doing business in the State of Texas with principal headquarters located at 2300 North Field Street, Ste. 1900, Dallas, Texas 75201. PSC has been served through its registered

agent, Corporation Service Company d/b/a CSC – Lawyers Incorporation Service Company located at 211 E. 7th Street, Ste. 620, Austin, Texas 78701.

3. PLH Group, Inc.("PLH") is a foreign corporation doing business in the State of Texas with principal headquarters located at 400 E. Las Colinas Blvd, Ste. 800, Irving, Texas 75039. PLH has been served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Ste. 620, Austin, Texas 78701.

4. Power Line Services, Inc. ("PLS") is a foreign corporation doing business in the State of Texas with corporate offices located at 400 East Las Colinas Blvd. Ste. 900, Irving, Texas 75039. PLS has been served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Ste. 620, Austin, Texas 78701.

5. Future Infrastructure, LLC ("Future") is a domestic limited liability company with principal headquarters located at 3325 Innovative Way, Mesquite, TX 75149. Future has been served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Ste. 620, Austin, Texas 78701.

6. Venue is proper in this district pursuant to 42 U.S.C. 2000e-5(f)(3) and 28 U.S.C. §1391(b)(1).

## Facts

7. Primoris Service Company ("PSC") is a specialty contractor that provides infrastructure services in the utility, energy and renewables markets.

8. In August of 2022, PloymnSC acquired PLH Group, Inc (the parent company of PLS).

9. PSC has a number of different business units, including PLS and Future.

10. According to PSC's website, PLS provides "high-voltage transmission, substation and distribution construction and maintenance services for investor-owned utilities, municipalities, cooperatives, and renewable energy developers throughout the U.S.".

11. According to PSC's website, Future is a "communications infrastructure specialty contractor offering program management, engineering, construction, and maintenance services to the leading communications companies across U.S. markets."

12. In 2022, Ms. Leslie Scott, PSC Recruiting Director, recruited Ms. Byrd for a Human Resources Manager role at PSC.

13. Ms. Byrd is an African-American.

14. In recruiting Ms. Byrd, Ms. Scott explained the Human Resources Manager role would be challenging as PSC wished to change their company culture, and PSC hoped Ms. Byrd would facilitate this change.

15. Ms. Byrd accepted the challenge and, in October of 2022, commenced employment with PSC as a Human Resources Manager.

16. Initially, Ms. Byrd was assigned to support PSC's Power Line Services business unit, PLS.

17. Specifically, Ms. Byrd provided human resources support for PLS' Transmission Division.

18. At that time, Mr. Bryce Burns was the Director of Transmission.

19. Ms. Byrd soon learned that it was well known throughout PSC that Mr. Burns was outwardly biased against African American employees.

20. Approximately one month after Ms. Byrd began working at PSC, Ms. Byrd reported to Ms. Alicia Campbell, Human Resources Director, that Mr. Burns stated to her, "You cannot let the prisoners run the prison," in reference to minority employees.

21. Ms. Byrd explained to Ms. Campbell that Mr. Burns' comments were offensive, racially-based, and should not be tolerated.

22. Ms. Byrd also expressed concern to Ms. Campbell that Mr. Burns had used this comment in the context of pushing Ms. Byrd to terminate minority employees, without following company policies and protocols.

23. Ms. Byrd also provided Ms. Campbell with a text message from another employee, Mr. Richard Conrad, stating that Mr. Burns does not like "n*ggers" either.

24. In retaliation for Ms. Byrd's complaints, Mr. Burns and Ms. Campbell interfered with Ms. Byrd's ability to perform her job duties.

25. Mr. Burns prohibited Ms. Byrd from traveling to Florida– even though Florida was part of Ms. Byrd's work territory.

26. Mr. Burns and Ms. Campbell also excluded Ms. Byrd from team meetings.

27. After Ms. Byrd reported Mr. Burns for making inappropriate racial comments, Ms. Byrd was moved to a different PSC division, Future, and assigned to a new director.

28. Ms. Byrd remained in this division for the remainder of her employment.

29. Ms. Byrd's former position in the PLS division was subsequently filled with two Caucasian female employees.

30. In February of 2023, an African-American employee, Tony Gill, told Ms. Byrd that Mr. Porter and Mr. Alvin Craddock, PSC director, had approached him in the break room in an aggressive, confrontational manner. The employee further reported that Mr. Craddock had called him a “n*gger” multiple times during this interaction.

31. Ms. Byrd investigated Mr. Gill’s race discrimination complaint.

32. Given the serious nature of Mr. Gill’s complaint, Ms. Byrd requested that the complaint be escalated, and receive immediate attention.

33. On or about February 20, 2023, Ms. Byrd met with Ms. Campbell.

34. Ms. Campbell told Ms. Byrd that she was upset over the contents of Ms. Byrd’s investigation notes. In particular, Ms. Campbell was upset that (1) Mr. Gill’s statement alleged use of the word “n*gger” and (2) Mr. Gill stated he did not want to report the incident to her (Ms. Campbell) or Ms. Kelli Woods, Human Resources.

35. Ms. Campbell then called Mr. Gill into her office while Ms. Byrd was present and instructed him to alter his witness statement.

36. Ms. Campbell then began yelling at Ms. Byrd stating that it was her job to convince the employee to change his statement.

37. Ms. Byrd refused to change Mr. Gill’s statement and refused to persuade Mr. Gill to modify his statement.

38. The next day, on or about February 21, 2023, Ms. Byrd’s employment was terminated.

39. Ms. Campbell and Ms. Jackie Hendricks, Senior Director, informed Ms. Byrd informed Ms. Byrd that her employment was being terminated.

40. After Ms. Byrd repeatedly requested a reason for her termination, Ms. Hendricks told Ms. Byrd she terminated due to a layoff.

41. The reason PSC provided for Ms. Byrd's termination was false and pretextual, and in actuality, Ms. Byrd was terminated because of her race and in retaliation for making complaints of discrimination and opposing unlawful discrimination.

42. Significantly upon information and belief, Ms. Byrd was the only employee terminated.

43. PLS' attorneys have since informed the EEOC that Ms. Byrd was laid off because PLS, the division Ms. Byrd was no longer supporting, shut down.

44. The two Caucasian female employees who had been hired to support the PLS division, and who were in fact supporting PLS at the time of Ms. Byrd's termination, kept their jobs and were not laid off.

## Causes of Action

### COUNT ONE: RACE DISCRIMINATION & RETALIATION
*(42 U.S.C. § 1981) (as amended by the Civil Rights Act of 1991)*

45. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

46. 42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts. This statute provides that "all persons … shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." This includes contracts of employment. Ms. Byrd had a contract of employment with Defendants.

47. Defendants PSC, PHL, PLS, and Future are joint employers or an integrated enterprise, and share common ownership, common employee benefit plans, common personnel policies, and common human resources and legal resources and staff.

48. The intertwined nature of Defendants' operation is evidence by Ms. Byrd's employment itself, wherein she reported up the chain of command to PSC's HR Director Alicia Campbell and PSC's Senior HR Director Janie Hendricks; wherein she was transferred between PLS and Future to provide HR support to different PSC divisions without her employment status or employee benefits changing and with all earnings reported on the same W-2; wherein Ms. Campbell and Ms. Hendricks terminated Ms. Byrd's employment despite the fact they worked for PSC, Ms. Byrd supported Future at the time, and Ms. Byrd's paychecks came from PLS at the time.

49. As joint employers and an integrated enterprise, the Defendants together subjected Ms. Byrd to disparate treatment in the terms and conditions of her employment because of her race.

50. Specifically, Defendants fired Ms. Byrd because she opposed and complained about acts that she, in good faith, believed to be racially discriminatory.

51. But for her race and/or protected activity, Ms. Byrd would not have been fired when she was.

52. Through its conduct, Defendants deprived Ms. Byrd of the same rights as enjoyed by white employees to the creation, performance, enjoyment and all benefits and privileges of employment with Defendants in violation of 42 U.S.C. § 1981.

53. Plaintiff seeks to recover lost wages from February 21, 2023, to May 15, 2023, compensatory damages, punitive damages, pre-judgment interest, and post-judgment interest.

54. Plaintiff requests reinstatement, and any non-monetary equitable or injunctive relief necessary to redress Defendant's violation of the Title VII and 42 U.S.C. §1981 (such as training or re-training, posting this lawsuit & any judgment, posting employee rights).

55. Plaintiff also seeks recovery of her reasonable attorney's fees and court costs.

56. Defendants' conduct was intentional, deliberate, malicious, and in a callous disregard for the rights of Ms. Byrd, and therefore Plaintiff also seeks punitive damages to deter Defendants from continuing its pattern of engaging in racial discrimination and retaliation against minority employees.

## COUNT TWO: DISCRIMINATION & RETALIATION
(*TITLE VII 42 U.S.C. §2000e*)

57. Plaintiff realleges and incorporates by reference all of the facts set forth in the preceding sections of this Complaint.

58. On or about November 17, 2023 Ms. Byrd filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission alleging color/race discrimination and retaliation against Defendants.

59. Ms. Byrd received an EEOC right-to-sue on August 5, 2024.

60. This action is being commenced within the required time limits under Title VII.

61. Plaintiff satisfied all jurisdictional prerequisites in connection with her claims

under The Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et. seq.*

62. Defendants are an "employer" as defined by Title VII. (Collectively, Defendants were Plaintiff's joint employer as more thoroughly described in the preceding section.)

63. Plaintiff was an "employee" as defined by Title VII.

64. As described above, Defendants intentionally and willfully violated Title VII, by discriminating and retaliating against Plaintiff.

65. This discrimination affected the terms and conditions of Plaintiff's employment, including, but not limited to, terminating Plaintiff because of her race.

66. This retaliation affected the terms and conditions of Plaintiff's employment, including, but not limited to, terminating Plaintiff because she engaged in a protected activity by opposing discrimination she reasonably believed to be unlawful and participating in a race discrimination investigation.

67. Defendants do not have adequate policies or procedures in place to address the discrimination and retaliation.

68. Defendants' conduct was intentional, deliberate, malicious and in a callous disregard for the rights of Ms. Byrd.

69. As a result of Defendants' violations, (as mentioned above), Plaintiff has also suffered severe harm to her dignity as a person deserving of equal treatment under the law, outrage and offense, mental trauma, loss of enjoyment of life, and other losses.

70. As a result of these willful and intentional violations, Plaintiff requests that she be awarded lost wages from February 21, 2023 to May 15, 2023, compensatory and punitive damages to which she is entitled, equitable and/or injunctive relief, and attorney's

fees and costs.

## JURY DEMAND

Plaintiff requests trial by jury on all claims.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial, Plaintiff have judgment against Defendants, jointly and severally, as follows:

a. Judgment against Defendants for lost wages from February 21, 2023 to May 15, 2023, compensatory damages in the maximum amount allowed by law;

b. Judgment against Defendants for punitive damages in the maximum amount allowed under law;

d. An order that Defendants take such other and further actions as may be necessary to redress Defendant's violation of the Title VII and 42 U.S.C. §1981;

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, and an award of reasonable attorney's fees; and

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Date: January 5, 2026

Respectfully submitted,

**TREMAIN ARTAZA PLLC**

*/s/ Carmen Artaza*
Carmen Artaza
Texas State Bar No. 24055114
carmen@tremainartaza.com
Christine Hopkins
Texas State Bar No. 24095786
christine@tremainartaza.com
6060 North Central Expwy, Ste. 567
Dallas, TX 75206
Direct: (469) 573-0297
Fax: (214) 254-4941

**COUNSEL FOR PLAINTIFF**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHARLOTTE CHAPMAN BYRD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. 3:24-cv-2767** |
| **PRIMORIS SERVICES CORPORATION,** | § | |
| **PLH GROUP INC., POWER LINE** | § | **JURY TRIAL DEMANDED** |
| **SERVICES, INC. and FUTURE** | § | |
| **INFRASTRUCTURE, LLC,** | § | |
| | § | |
| **Defendant.** | | |

**DECLARATION OF CARMEN ARTAZA**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE HER SECOND AMENDED COMPLAINT**

Pursuant to 28 U.S.C § 1746, I declare, under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I, Carmen Artaza, am licensed to practice law in the State of Texas. I represent Plaintiff Charlotte Chapman Byrd in the above captioned matter. I have personal knowledge of the below facts and can testify to these facts if called to do so.
2. In this case, I took and recorded the depositions of Shunte Curtis via Zoom's video conferencing platform using the services of Depositions Officers duly certified as notary publics to administer oaths.
3. True and correct copies of the audio and video recordings of these depositions, and fully executed Deposition Officer Certifications of these depositions, are stored on the cloud in a Box link that both the Court and Defendant's counsel can access at https://app.box.com/s/4egwjeui0orjhw91u0hfrborsxapm0a7. Below, Plaintiff's counsel

provides true and correct transcriptions of exceprts of those depositions that support Plaintiff's Motion for Leave to file Plaintiff's Second Amended Complaint.

4. From 01:50:46 – 01:53:04 of her deposition, Shunte Curtis testified as follows under oath:

Q: Okay. I'm gonna show you what I've marked as Exhibit two. Okay. This is a series of, um, emails that we're gonna go through, and I just wanna ask you some questions about each of these documents. Um, is this, um, a true and c- is this first email dated January 19th, 2023, a true and correct copy of an email that you sent to Ms. Byrd?

A: Yes.

Q: Okay. And why, why are you sending her this email?

A: Because it was part of the transition and I was just giving her a list of, of contacts and who, who she could contact for any specific matter.

Q: Okay. Okay. And then it looks like if we go to the second page of this document, which is Bates labeled 3989, is this a true and correct copy of an email that you sent to Ms. Byrd on January 20th, 2023?

A: Yes.

Q: And, uh, it looks like this is a meeting invite, uh, where you were inviting, um, Ms. Byrd and Ms. Tanner to a meeting, um, and is, is that accurate?

A: Yes.

Q: And is that a meeting to transition future over to Ms. Byrd?

A: Yes, it was part of it. They needed to receive training.

Q: What kind of training did they need to receive?

A: How to enter new hires into the system.

Q: And is it your testimony that, was that for all of future or, uh, just future gas?

A: Future gas.

5. From 01:47:07 – 01:48: 06 of her deposition, Shunte Curtis testified as follows under oath:

Q: Now, um, at some point, um, a- as you mentioned earlier, it's my understanding that Ms. Byrd was going to take over a future and be the human resources manager for, for, for future. Is that accurate?

A: No, she was going to take over future gas.

Q: Okay. So you were going to retain future communications, is that correct?

A: Correct.

Q: And at that time, do you remember how many employees were under future gas?

A: I'd say roughly 70.

Q: Excuse me.

A: You're fine.

Q: Okay. And, um, do you know why those employees were going to be transitioned over to Ms. Byrd?

A: No. It was just shared with me that, um, she was just going ... She needed some additional work.

6. From 02:34:08 – 02:34:29 of her deposition, Shunte Curtis testified as follows under oath:

Q: So the ... Okay, so let's say Ms. Byrd was fired on Februar- February 21st, 2023. The next day, February 22nd, 2023, assuming that's not a Saturday or Sunday, who took over handling the Future Gas employees?

A: Um, I think it went back under me until me and Theresa did our transition, which I think that took place in May of 2023, April or May, something around that time.

Executed on January 5, 2026 in Dallas County, Texas

*/s/ Carmen Artaza*

Carmen Artaza