IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE CHAPMAN BYRD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-02767-N |
| | § | |
| PRIMORIS SERVICES CORP., *et al.*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Plaintiff Charlott Chapman Byrd's motion to compel [34], Defendant Primoris Services Corp.'s ("Primoris") motion to exclude expert testimony [35], and Byrd's motion to quash defendant's subpoena duces tecum to Kristie Madison [27] . The Court denies Byrd's motion to compel, denies Primoris' motion to exclude expert testimony, and denies Byrd's motion to quash defendant's subpoena duces tecum to Kristie Madison.

## I. Origins of the Motion

This is an employment discrimination case. Byrd alleges that her prior employer, Primoris, discriminated against her based on her race and retaliated against her for opposing discriminatory practices. Pl.'s Compl. 6–9 [1]. Byrd alleges that while working at Primoris as a Human Resources Manager, an employee named Tony Gill approached her to make a discrimination report. *Id.* at ¶ 30. Byrd says she then investigated and reported this incident to Human Resources Director, Alicia Campbell. *Id.* at ¶ 20, 32–33. Byrd alleges that Campbell took issue with the report and instructed both Gill and Byrd to alter

it. *Id.* at ¶ 34–36. Byrd refused. *Id.* at ¶ 37. She was terminated two days later. *Id.* at ¶ 38. Primoris maintains that Byrd was terminated as part of a reduction in force due to financial shortfalls from a prior acquisition. Def.'s Mot. Exclude Expert Testimony 3 [35]. Byrd claims she was fired because of race discrimination and her refusal to alter the report. Pl.'s Compl. at ¶ 37–38. Byrd now brings Title VII claims of race discrimination and retaliation under 42 U.S.C. section 1981 and 42 U.S.C. section 2000e against Defendant Primoris. *Id.* at 6-9.

## II. LEGAL STANDARD FOR DISCOVERY

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A litigant may request the production of documents falling "within the scope of Rule 26(b)" from another party if the documents are in that party's "possession, custody, or control." FED. R. CIV. P. 34(a). To enforce discovery rights, a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). The Fifth Circuit requires the party seeking to prevent discovery to specify why the discovery is not relevant or show that it fails the proportionality requirements. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.3d 1482, 1485 (5th Cir. 1990); *see also Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005).

Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant. *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). A district court has wide

discretion to supervise discovery, however, and may limit discovery if it would be unreasonably cumulative, could be obtained more easily from a different source, is not proportional to the needs of the case, or if the burden or expense of proposed discovery outweighs its potential benefit. FED. R. CIV. P. 26(b)(2)(C); *see also Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990).

## III. THE COURT DENIES BYRD'S MOTION TO COMPEL

### *A. Request for Production No. 48*

Byrd's Request for Production No. 48 asks Primoris to produce "a complete copy of all ethics complaints, internal complaints of discrimination, EEOC Charges, or lawsuits filed in connection with Reductions in Force that occurred between November 1, 2022 and March 1, 2023." Pl.'s Mot. Compel 6 [34]. Primoris says that it has already produced all responsive documents. Def. Resp. 3–4 [48]. Because Primoris has already produced all responsive documents, the Court denies Byrd's motion to compel additional responses to Request for Production No. 48.

### *B. Requests for Production Nos. 49 and 50*

Byrd's Request for Production No. 49 asks Primoris to "[p]roduce a complete copy of all ethics complaints, internal complaints of discrimination, EEOC Charges, or lawsuits that make allegations of race discrimination, racial harassment, or retaliation against Defendant or any of its companies of divisions from January 1, 2017 through present." Pl.'s Mot. Compel 7 [34]. Request for Production No. 50 asks Primoris to "[p]roduce a complete copy of all Human Resources investigations that investigated reports of race discrimination, racial harassment, or retaliation against [Primoris] or any of its companies

or divisions from January 1, 2017 through present." *Id.* at 8. Primoris responds that both Requests Nos. 49 and 50 seek documents that are irrelevant to Byrd's individual discrimination and retaliation claims.[1] Def.'s Resp. 4 [48]. The Court determines that Requests Nos. 49 and 50 seek information that is only marginally relevant to Byrd's claims. Moreover, the requests are overbroad, as they seek information relating to all claims over a nine-year period. Accordingly, the Court denies Byrd's motion to compel responses as to Requests for Production Nos. 49 and 50.

### *C. The Court Denies Attorneys' Fees to Byrd and Primoris*

Byrd and Primoris each move for an award of reasonable attorneys' fees incurred in filing their motions. Def.'s Resp. 10 [48]; Pl.'s Reply 10 [53]. Under Rule 37(a)(5), a court must not award reasonable expenses if "the motion was substantially justified or other circumstances make an award of expenses unjust." *See* FED. R. CIV. P. 37(a)(5)(B). Accordingly, the Court denies reasonable attorneys' fees as to both.

## IV. THE COURT DENIES PRIMORIS' MOTION TO EXCLUDE EXPERT TESTIMONY

### *A. Legal Standard*

Under Federal Rule of Evidence 702, a witness must be qualified as an expert by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. A qualified expert may testify if the expert's specialized knowledge will help the trier of fact and (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of

[1] Primoris originally also objected to Request for Production No. 50 on privilege grounds; however, according to its response, it now objects only on relevance grounds. Def.'s Resp. at 9–10. Thus, Byrd's request for Primoris to produce a privilege log is moot.

reliable principles and methods," and (3) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *Id*. District courts must determine that expert testimony "is not only relevant, but reliable," and make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" and "can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592–93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999) (holding *Daubert* principles apply to all types of experts). The focus, however, "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

District courts have broad discretion to determine the admissibility of expert testimony. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). But the rejection of expert testimony is the exception, not the rule. *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2016 WL 9560113, at *3 (N.D. Tex. 2016). The *Daubert* inquiry may not replace the adversarial system. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 250 (quoting *Daubert*, 509 U.S. at 596). Indeed, "while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id.*

Byrd retained Mark Clark as an expert witness to testify about employment practices, policies, and procedures. *See generally* Clark Report at Pl.'s App. 1 [50-1]. Specifically, his opinions include a discussion of human resources' "best practices." Pl.'s

Resp. 1 [50]. Primoris asserts that Clark should be excluded because (1) his specialized knowledge is not helpful to the jury and (2) his opinions are not reliable. *See generally* Def.'s Mot. Exclude [35]. Because the Court finds that Clark's opinions satisfy the requirements of Rule 702, the Court denies Primoris' motion to exclude Clark's testimony.

***B. Clark's Testimony Would Be Helpful to the Trier of Fact***

Primoris argues that Clark's testimony is inadmissible because it is not helpful to the trier of fact and risks confusing the issues. Def.'s Mot. Exclude 4 [35]. Because this is an intentional discrimination claim, Primoris says that Clark's specialized knowledge of "human resources best practices," is too limited to help the jury. *Id.* at 5. Also, Primoris argues that Clark's opinions are merely common sense. *Id.* at 7.

The question of whether evidence is helpful to the trier of fact is "a question of relevance." *See Barbe v. Gov't Emp.'s Ins. Co.*, No. 13-CV-441, 2014 WL 12601572, at *3 (E.D. Tex. June 30, 2014) (citing *United States v. Posado*, 57 F.3d 428, 432 (5th Cir. 1995)); *see also American Airlines, Inc. v. Delta Air Lines, Inc.*, No. 19-CV-1053, 2021 WL 3629735, at *4 (N.D. Tex. May 18, 2021). "Evidence is found to be relevant, and therefore helpful to the trier of fact, if it assists the trier of fact in determining a fact in issue." *Barbe*, 2014 WL 12601572, at *3 (citing *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012)); *see also Underwood Fin., Ltd. v. AMCO Ins. Co.*, No. 23-CV-00825, 2026 WL 785729, at *13 (N.D. Tex. Mar. 19, 2026). Here, whether standard HR practices and protocols were used in Byrd's firing and in the investigation of Tony Gills' complaint is relevant. Thus, the Court determines that Clark's testimony would be helpful to the trier of fact, as it can assist them in determining a fact in issue.

### *C. Clark's Testimony is Reliable*

Alternatively, Primoris argues that Clark's testimony should be excluded because it is not reliable, as he (1) failed to rely on sufficient facts and data and (2) failed to use reliable principles and methods. The Court addresses these arguments in turn.

First, the Court determines that Clark relies on sufficient facts and data. According to Primoris, Clark considered only a "handful of documents" that were curated by Byrd in reaching his opinion. Def.'s Mot. Exclude 10 [35]. This makes his opinion "biased," Primoris says. However, Clark's expert witness report indicates that he reviewed Primoris' employee handbook, deposition files from key witnesses, Byrd's complaint, Primoris' responses, and other important documents. Def.'s App. 5 [36]. While this review does not encompass the entire record, the documents listed contain sufficient information upon which Clark could form a reliable opinion. Moreover, Primoris' contention regarding Clark's bias goes to the weight and credibility of his opinions, not the admissibility. Primoris is free to address "shaky" evidence on cross-examination. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). Accordingly, the Court determines that Clark relied on sufficient facts and data.

Second, the Court determines that Clark used reliable principles and methods. Clark stated that his methodology involved analyzing the facts obtained from the case materials "against professional standards, legal standards, and the practices, principles, and protocols recognized, relied upon, and employed in the human resources professions during the relevant time." Def.'s App. 5 [36]. He also compared the facts against his "Best Practices Pre-Termination Checklist," which he developed himself, and his over forty years of

experience. Pl.'s Resp. 18, 20 [50]. The Court determines that Clark used reliable principles and methods in forming his opinion. Accordingly, because Clark's testimony is both helpful and reliable, the Court denies Primoris' motion to exclude his testimony.

## V. THE COURT DENIES BYRD'S MOTION TO QUASH

Under Rule 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii). "As a general rule, a party has standing to challenge a third-party subpoena in order to protect a personal right or privilege." *Canyon Partners, L.P. v. Devs. Diversified Realty Corp.*, 2005 WL 5653121, at *1 (N.D. Tex. 2005) (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). "'Privilege' refers to protections afforded by the rules of evidence, including attorney-client privilege and work product protection." *MC Trilogy Tex., LLC v. City of Heath*, No. 22-CV-2154, 2023 WL 7004442, at *2 (N.D. Tex. Oct. 24, 2023). The Court "must quash or modify a subpoena that 'requires disclosure of privileged or other protected matter, if no exception or waiver applies.'" *Zurich American Ins. Co. v. Nautilus Ins. Co.*, No. 25-CV-296, 2025 WL 2880815, at *2 (N.D. Tex. Oct. 9, 2025) (citing FED. R. CIV. P. 45(d)(3)).

Here, Primoris served a subpoena on third-party Kristie Madison to provide (1) all communications with Byrd that discuss Byrd's Primoris employment, (2) all communications with Byrd's attorneys related to Madison's October 2025 witness declaration, and (3) all communications between Madison and current or former Primoris employees regarding the Primoris work environment, Byrd's termination, allegations of

misconduct by human resources employees at Primoris, Byrd's legal action against Primoris, or any anticipated legal action against Primoris. *See* Pl.'s Mot. 7 [27-1]. Byrd asks the Court to quash the subpoena on the grounds that she "has a personal right and privilege in the communications" between herself, her attorneys, and Madison. Pl.'s Mot. 2–3 [27]. That is, she argues that she "has standing to protect communications that implicate privilege and work product." *Id.* at 3.

First, the Court determines that Byrd lacks standing to challenge the subpoena because Byrd does not have any personal right or privilege in the materials Primoris requests from Madison. Moreover, even if Byrd had standing, the materials sought are not protected or privileged—any work product or attorney-client privilege that Byrd may have had was waived when the information was communicated to Madison, a third party. Accordingly, the Court denies Byrd's motion to quash the subpoena to Kristie Madison.

## CONCLUSION

For the foregoing reasons, the Court denies Byrd's motion to compel [34], denies Primoris' motion to exclude expert testimony [35], and denies Byrd's motion to quash defendant's subpoena duces tecum to Kristie Madison [27].

Signed September 8, 2026.

David C. Godbey
Senior United States District Judge