IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE CHAPMAN BYRD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-02767-N |
| | § | |
| PRIMORIS SERVICE CORP., *et al.*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Primoris Service Corporation's motion for summary judgment [37]. Because it finds that there is no genuine dispute of material fact as to Plaintiff Charlotte Chapman Byrd's retaliation and discrimination claims, the Court grants the motion.[1]

## I. Origins of the Motion

This is an employment discrimination and retaliation case. Byrd alleges claims of race discrimination and retaliation under both Title VII and 24 U.S.C. § 1981 against Primoris Service Corporation ("Primoris"). Def.'s Mot. Summ. J. [37]. According to Primoris, Byrd was hired in October of 2022 as a Human Resources Manager, specifically to oversee a newly acquired Primoris subsidiary, Power Line Services ("PLS"). Def.'s Br. Supp. Mot. Summ. J. 3 [42]. By December of 2022, however, PLS was underperforming

[1] Accordingly, the Court denies Byrd's motion for request for judicial notice as moot [70].

financial expectations, and Primoris began transferring PLS's assets and human capital to different areas of the company. *Id.* 4. The transfers were also accompanied by employee reductions in force ("RIFs") and a restructuring of the HR operations. *Id.* 4–5. Byrd was placed on an RIF list on the morning of February 16, 2023, Primoris says, as a part of these larger structural changes and business needs. *Id.* 8, 17. She was then officially terminated on February 21, 2023. *Id.* 16–17.

Byrd, on the other hand, believes she was fired as retaliation for her protected activity of reporting discrimination. Pl.'s Br. Supp. Resp. 41 [46]. According to her, on February 15, 2023, a white employee allegedly called an African American employee, Tony Gill, a racial epithet. *Id.* 16–17. Even though Gill was technically supposed to report to HR Manager Kelly Wood, he instead approached Byrd to report the incident. *Id.* 18; Def.'s Br. Supp. Mot. Summ. J. 9. The next day, February 16, 2023, at 4:29 PM, Byrd then informed her supervisor, Alicia Campbell, about Gill's allegations. Def.'s Br. Supp. Mot. Summ. J. 10; Pl.'s Br. Supp. Resp. 19. Byrd officially took Gill's statement on February 17, 2023. Pl.'s Br. Supp. Resp. 19. Then, two days later, on February 19, Gill texted Byrd seeking to retract a part of his original statement—namely, the alleged use of the racial epithet. Def.'s Br. Supp. Mot. Summ. J. 13; Pl.'s Br. Supp. Resp. 23. According to Gill, he could not recall the word being used. Def.'s App. 107 [39]. In response, Byrd then scheduled another meeting with Gill for February 20, 2023 at 9:00 AM. Def.'s Br. Supp. Mot. Summ. J. 13.

According to Byrd, Campbell joined their meeting that morning and specifically instructed Gill to remove the allegation regarding the racial epithet. Pl.'s Br. Supp. Resp.

24. She also alleges that Campbell pressured her to remove this allegation from Gill's statement, which she refused to do. *Id.* 5. That afternoon, Byrd was removed from the investigation and Gill's case was reassigned to Wood. Def.'s Br. Supp. Mot. Summ. J. 15–16. Afterwards, Byrd contacted HR Manager Shunte Curtis to express her opinion that an employee used a racial epithet and that Primoris "was not going to do anything about it" because they removed her from the investigation. *Id.* 14; Pl.'s Br. Supp. Resp. 483. Primoris denies that Campbell ever instructed Byrd or Gill to remove the statement and insists that the investigation was re-assigned to Wood because Gill fell under her remit, not Byrds. Def.'s Br. Supp. Mot. Summ. J. 15–16.

Byrd claims that her refusal to change Gill's statement and complaint to Curtis regarding her removal from the Gill investigation were the real reasons for her termination on February 21st. Pl.'s Br. Supp. Resp. 26. She brings two causes of action against Primoris: (1) race discrimination and retaliation under 42 U.S.C. § 1981 and (2) discrimination and retaliation under Title VII 42 U.S.C §2000e. Primoris now files this motion for summary judgment as to all claims.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial

burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (citation omitted). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT ON BYRD'S RETALIATION CLAIM

The Court concludes that Primoris is entitled to summary judgment on Byrd's retaliation claims under Title VII and Section 1981. Assuming *arguendo* that Byrd did engage in protected activity in her investigation of Gill's complaint, she cannot establish that such activity "caused" her termination under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This framework applies where a retaliation case is based on circumstantial evidence. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020).

Under *McDonnell Douglas*, "the plaintiff has the burden to prove a prima facie case of retaliation by showing (1) she engaged in a protected activity; (2) she 'suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *Id.* (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)). "If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide 'a legitimate, non-discriminatory reason' for the adverse employment action." *Id.* (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). Then, "if the employer meets this burden," the plaintiff must "prove that the proffered reason is pretext" for retaliation. *Id.*; *Rodriguez v. Brownsville Indep. Sch. Dist.*, 739 F. App'x. 227, 231 (5th Cir. 2018) (unpublished). "Ultimately, in order to survive a motion for summary judgment, a plaintiff must show 'a conflict in substantial evidence' on the ultimate issue, whether the employer would not have taken the adverse

employment action but for the protected activity." *Brown*, 969 F.3d at 577 (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)).

Byrd argues that timing alone establishes causation. Pl.'s Br. Supp. Resp. 41–42. That is, she says that the one-day gap between Byrd's protected activity and her termination is sufficient to establish the prima facie case. *Id.* Because the gap is so short, the Court agrees that she has at least met the prima facie burden for causation. *Brown*, 969 F.3d at 578 (finding that a six-to-seven-week gap between the protected activity and termination was sufficient to meet the prima facie burden based on timing alone).

However, establishing a prima facie case does not end the inquiry at the summary judgment stage. As stated above, the burden under *McDonnell Douglas* shifts to Primoris to provide evidence of a legitimate, nondiscriminatory reason for Byrd's termination. Here, Primoris has shown that Byrd was placed on an RIF list on the morning of February 16th as a result of business restructuring due to PLS's financial struggles. This is sufficient to shift the burden back to Byrd. *See Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) ("Elimination of an employee's position as a result of a reorganization or a reduction-in-force is a legitimate, non-retaliatory reason for the employee's termination."). Byrd therefore must establish that the proffered reasons are actually pretext for retaliation. Namely, she must show that the adverse action "would not have occurred *but for*" the retaliatory motive. *Id.* (emphasis added).

The Court determines that Byrd fails to do so. Byrd does not contest that she was placed on the RIF list for termination *prior* to reporting Gill's complaint to Campbell. Pl.'s Br. Supp. Resp. 5. Given the timing, this means that her investigation of Gill could not

have been the "but for" cause of her termination being as it had not happened yet. Moreover, mere "'temporal proximity alone is insufficient' to survive summary judgment at the pretext stage in the absence of 'other significant evidence of pretext.'" *Musser*, 944 F.3d at 564 (quoting *United States ex rel King v. Solvay Pharmaceuticals, Inc.*, 871 F.3d 318, 334 (5th Cir. 2017)). Finding no other clear indicators of pretext, the Court determines that there is no "conflict in substantial evidence" on the ultimate issue sufficient to survive summary judgment. *Id.* at 561.

Byrd contends that the RIF list was not "final," being as other individuals on the list were either terminated at a later date or not terminated at all. Pl.'s Br. Supp. Resp. 5. However, it is unclear to the Court how this changes the calculus as to *her* termination. That Primoris changed its decision or altered the termination timeline on *other* employees is irrelevant to and independent from the reasoning behind her own discharge. Moreover, Primoris does not entirely rely on the RIF list, as Byrd contends—according to Senior HR Director Jackie Hendrick, who was involved with Byrd's termination, Primoris actually identified her for the RIF (and other employees) as far back as December 2022. Def.'s Br. Supp. Mot. Summ. J. 6; Def.'s App. 304 [39]. Accordingly, the Court grants Primoris' motion for summary judgment as to Byrd's retaliation claims.

## IV. THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT ON BYRD'S DISCRIMINATION CLAIMS

Next, Byrd brings claims of discrimination against Primoris under Title VII and section 1981. The Court concludes that Primoris is also entitled to summary judgment on these claims because there is not a genuine dispute of fact. Title VII makes it unlawful for

"an employer . . . to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Similarly, section 1981 guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts" regardless of race. 42 U.S.C. § 1981(a). "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *Jackson v. Fed. Exp. Corp.*, 2006 WL 680471, at *3 (N.D. Tex. 2006); *see also Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).

"In the context of a Title VII/ § 1981 race discrimination claim" the plaintiff "must present sufficient direct or circumstantial evidence that would permit a reasonable trier of fact to find that [their] race was a motivating factor in the decision to discharge [them]." *Jackson*, 2006 WL 680471, at *3. Where direct evidence is unavailable, as here, the plaintiff can use the *McDonnell Douglas* burden-shifting approach. *Id.* at *4.

First, "to survive summary judgment, a Title VII plaintiff, or a § 1981 plaintiff, must [] establish a prima facie case of discrimination by a preponderance of the evidence." *Id.*; *Gilbert v. Big Bros. Big Sisters of Am., Inc.*, 262 F. Supp. 3d 402, 406–07 (N.D. Tex. 2017). Second, if the plaintiff can show the prima facie case, the burden will then shift to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Gilbert*, 262 F. Supp. 3d at 406. The employer's burden is one of production, not persuasion, and does not involve a credibility assessment. *See Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011); *Jackson*, 2006 WL 680471, at *3. Third, if the employer can establish a legitimate reason for discharge, then the burden will shift back to the plaintiff to "make the ultimate showing of intentional discrimination." *Gilbert*, 262 F.

Supp. 3d at 407. Even assuming that Byrd can establish the prima facie case, the Court determines that she fails under *McDonnell Douglas*' third step.

To establish a prima facie case of racial discrimination in employment, Byrd must demonstrate that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). In this case, only the fourth element is contested—that Byrd was treated less favorably than other similarly situated employees. Here, Byrd points to several Primoris employees who she argues are similarly situated individuals who were treated more favorably (i.e. were not terminated). Pl.'s Br. Supp. Resp. 32–33. For various reasons, such as employee tenure and senior status, Primoris argues that these individuals are not proper comparators. Def.'s Br. Supp. Mot. Summ. J. 24–25. The Court, however, does not need to address this issue in depth because Byrd ultimately fails to put forth evidence that shows Primoris' non-discriminatory reason for termination was mere pretext. Therefore, the Court will assume, without deciding, that Byrd established her prima facie case.

As stated, Primoris has sufficiently shown a legitimate, nondiscriminatory reason for Byrd's termination. From the beginning of her employment, Byrd was assigned to PLS, a recently acquired subsidiary of Primoris. Def.'s Br. Supp. Summ. J. 26; Def.'s App. 25–26 [39]; Pl.'s Second Am. Compl. 3 [29]. However, beginning in December, just a few months after Byrd began working, PLS employees were transferred to another unit. Pl.'s

Br. Supp. Resp. 4; Def.'s Br. Supp. Mot. Summ. J. 26–27. These transfers were accompanied by RIF waves, and the HR department in which Byrd was employed was also undergoing restructuring. Def.'s Br. Supp. Mot. Summ. J. 6; Def.'s Reply 12 [55]. Accordingly, Byrd was placed on an RIF list on February 16, 2023. In fact, as Byrd concedes, none of the original support staff, two other HR employees, hired by Primoris for PLS remained in the company after August of 2023. Def.'s Reply 12; Pl.'s Br. Supp. Resp. 5. Thus, the Court determines that Primoris has met its burden of production.

Because Primoris has produced a legitimate, non-discriminatory reason for Byrd's termination, to survive summary judgment, Byrd must create a genuine and material fact issue regarding the ultimate question of discrimination. She can do so by showing that Primoris' reasons for termination are not true, but instead are pretext. *Jackson*, 2006 WL 680471, at *3. After reviewing the evidence, the Court determines that she has failed to do so.

To be clear, Byrd addresses only the adverse employment action of termination in her response for purposes of her discrimination claim. Pl.'s Br. Supp. Resp. 31. Specifically, she argues that her supervisor's alleged negative treatment of four other black HR employees over several years creates an inference that "race was a factor" in her decision to terminate Byrd. Pl.'s Br. Supp. Resp. 33. She also points to the treatment of two white HR employees who had worked with the PLS subsidiary, claiming that their retention is proof of discrimination. However, as Byrd must concede, one of those individuals *was* terminated only a few months later and the other left on her own accord. Pl.'s Br. Supp. Resp.; Def.'s Br. Supp. Mot. Summ. J. 8. Beyond this, Byrd does not point

to any other material facts that show Primoris' purported reasons for her termination are pretext for racial discrimination. While she was involved in an investigation of a complaint that may have included the use of a racial epithet, this involvement did not occur until *after* she was placed on the RIF list. In all, her assertions are conclusory and are insufficient to avoid summary judgment. *See Jackson*, 2006 WL 680471, at *8 ("Conclusory allegations, speculation, and unsubstantiated assertions are inadequate.").

Because it concludes that there is no genuine dispute of fact regarding Byrd's discrimination claims under both Title VII and section 1981, the Court grants Primoris' motion for summary judgment on Byrd's discrimination claims.

## CONCLUSION

Because Primoris has shown that there is no genuine dispute of material fact as to Byrd's retaliation and discrimination claims, the Court grants Primoris' motion for summary judgment.

Signed November 4, 2026.

David C. Godbey
Senior United States District Judge